IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NANCY PARRY MCSHANE                                                          PLAINTIFF

v.                              CIVIL NO. 15-5137

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration[1]            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Nancy Parry McShane, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her application for DIB on November 7, 2011. (ECF No. 13, p. 15). In her application, Plaintiff alleges disability due to bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), anxiety, fibromyalgia, migraine headaches, attention deficit hyperactivity disorder ("ADHD"), degenerative disc disease of the cervical and lumbar spine, and chondromalacia. (ECF No. 13, p. 199). Plaintiff alleges an onset date of October 31,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

2002. (ECF No. 13, p. 15, 195). This application was denied initially and again upon reconsideration. (ECF No. 13, pp. 64-65).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted. (ECF No. 13, p. 131, 145). Plaintiff's administrative hearing was held on October 31, 2013, in Fort Smith, Arkansas (ECF No. 13, pp. 37-63). Plaintiff appeared and was represented by John Baker. Id. Plaintiff and Vocational Expert ("VE") Patty Kent testified at this hearing. Id. At the time of this hearing, Plaintiff was fifty-two (52) years old, which is defined as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d). (ECF No. 13, p. 43). As for her level of education, Plaintiff graduated from college with a Bachelor's degree in journalism. (ECF No. 13, p. 43).

After this hearing, on February 28, 2014, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (ECF No. 13, pp. 12-29). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2007. (ECF No. 13, p. 17, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since October 31, 2002, her alleged onset date. (ECF No. 13, p. 17, Finding 2). The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, migraine headaches, chronic pain syndrome, osteoarthritis of the right shoulder, and bipolar disorder. (ECF No. 13, pp. 17-18, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 13, pp. 18-20, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 13, pp. 20-27, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found

her claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform "light work as defined in 20 C.F.R. 404.1567(b) except is limited to jobs involving simple tasks and simple instructions, and should have only incidental contact with the public." (ECF No. 13, p. 20).

The ALJ then determined Plaintiff was unable to perform her Past Relevant Work ("PRW"). (ECF No. 13, p. 27, Finding 6). The VE testified at the administrative hearing regarding this issue. (ECF No. 13, pp. 57-63). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as assembler of small products, a housekeeper, and, within the larger category of general office clerks, a sedentary unskilled office clerk. (ECF No. 13, pp. 27-28, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from October 31, 2002, through December 31, 2007, the date Plaintiff last met the insured requirements of the Act. (ECF No. 13, p. 28, Finding 11).

Thereafter, Plaintiff requested a review by the Appeals Council (ECF. No. 13, p. 11). The Appeals Council denied this request on April 9, 2015. (ECF No. 13, pp. 6-9). On June 15, 2015, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on January 25, 2016. (ECF No. 8). This case is now ready for decision.

**II.    Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial

3

evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. §§ 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. See 42 U.S.C. §§ 423(d)(1)(A).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet

or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v).

### III. Discussion:

Plaintiff argues the following issues on appeal: 1) The ALJ's analysis of Plaintiff's severe migraine headaches is contrary to law and not supported by substantial evidence; and 2) The ALJ's analysis of the medical opinion evidence of record is contrary to Agency policy and Eighth Circuit precedent, and not supported by substantial evidence.

#### A. The Listings

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Brown ex rel. Williams v. Barnhart, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted). Where the claimant suffers from an unlisted impairment, the ALJ must compare the claimant's impairment with an analogous listed impairment. 20 C.F.R. § 404.1526. Furthermore, the question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). "The fact that the ALJ d[oes] not elaborate on this conclusion does not require reversal [where] the record supports h[is] overall conclusion." Id.

5

In the past, the Commissioner compared a claimant's migraine headache symptoms to Listing 11.03, because its criteria was closely analogous to migraine headache symptoms. <u>See</u> Plaintiff's Exhibit (ECF No. 12-1) (regarding SSA Q&A 09-028); <u>See also</u> Plaintiff's Brief (ECF No. 12, pp. 3-5) (discussing Program Operations Manual System: DI 24505.015(B)(7)(b) where the Administration's second example compares chronic migraine headaches to Listing 11.03). Although new rules took effect on September 29, 2016, the case at hand remains governed by the rules in place during Plaintiff's relevant period and the date of the ALJ's decision. <u>See</u> Revised Medical Criteria for Evaluating Neurological Disorders, 81 Fed. Reg. 43048-01 (July 1, 2016) (codified at 20 C.F.R. pt. 404). In the present case, the ALJ's decision is void of any evidence he compared Plaintiff's migraine headache symptoms to any analogous Listing criteria. The ALJ's only discussion of Plaintiff's migraine headache symptoms, after determining they were a severe impairment, occurred when the ALJ addressed records from the Headache Care Center:

> From 2004 through 2008, [Plaintiff] was treated at the Headache Care Center for both migraines and fibromyalgia pain. Treatment notes from the center show that [Plaintiff] complained of varying pain and frequent headaches, sometimes better, sometimes worse. . . . However, MRI of [Plaintiff's] brain showed no acute infarction, but multiple foci of signal abnormalities more prominent involving the left cerebral hemisphere. Moreover, CT scan showed only stable sinusitis.

(ECF No. 13, p. 21) (internal citation omitted). Those same records, however, show Plaintiff complained of having approximately twenty migraine headaches per month and caused at least some interference with her activities during the day. (ECF No. 13, p. 388). They also show Plaintiff's migraine headaches included other symptoms such as photophobia, ringing in the ears, and an aura. (ECF No. 13, pp. 388-89, 395). The ALJ cited Plaintiff's April 4, 2005, MRI, but left out one important part. (ECF No. 13, p. 21). While the ALJ is correct that the MRI

showed "no acute infarction" and "multiple foci of signal abnormality more prominent involving the left cerebral hemisphere," the document continues after the ALJ stops; "these are nonspecific in appearance and can be seen in patients with multiple sclerosis and migraines." (ECF No. 13, pp. 410-11). Despite the evidence in the record, the ALJ failed to fully examine and analyze Plaintiff's migraine headache symptoms at step three of the sequential evaluation process.

After examining the record as a whole this Court finds that the ALJ's determination at step three of the sequential evaluation process was not based on substantial evidence in the record as a whole.

### B.   RFC Determination and Medical Opinion Evidence

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. Id. Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." Id. Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E). This limited tolerance for stress is particularly relevant because a claimant's RFC is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

As we have frequently noted, "treating physician opinions may receive limited weight if they are conclusory or inconsistent with the record." Julin v. Colvin, 826 F.3d 1082, 1088 (8th Cir. 2016). The ALJ may afford a treating source's opinion "controlling weight" if that opinion "'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record*.'" Wagner v. Astrue, 499 F.3d 842, 848–49 (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). "[W]hile a treating physician's opinion is generally entitled to 'substantial weight,' such an opinion does not 'automatically control' because the hearing examiner must evaluate the record as a whole." Id. at 849 (quoting Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999)). When a treating physician's opinion is in conflict with other substantial medical

8

evidence, then the ALJ may afford less weight to that physician's opinion. Id. (citing Prosch v. Apfel, 201 F.3d 1010, 1013–14 (8th Cir. 2000)).

The ALJ gave little weight to Plaintiff's treating psychiatrist, Dr. Julie Warren. (ECF No. 13, p. 25). The ALJ stated:

> Dr. Warren's opinions have been given little weight. Not only are her opinions contradicted by [Plaintiff's] own activities and allegations, they are inconsistent with the evidence of [the] record as a whole. The evidence of record indicates that during this period, [Plaintiff] was gardening, taking multiple family vacations, volunteering at her church, and working out. These are all activities that require a higher level of functioning than the doctor opined the claimant capable of performing.

(ECF No. 13, p. 25). Although the ALJ cited an inconsistency with the record as a whole, the ALJ's discussion of the evidence is itself inconsistent. The ALJ noted that Plaintiff had suffered from one or more mental health impairments at least as early as 2001, and that in August of 2003, Plaintiff began taking anti-depressant medication. (ECF No. 13, p. 22). The ALJ discussed evidence Plaintiff's depression had become so debilitating she presented to the emergency room in April of 2006, and was thereafter admitted to the adult crisis unit at Burrell Behavioral Health. Id. Plaintiff was diagnosed with chronic major depressive disorder and rule out bipolar affective disorder not otherwise specified. (ECF No. 13, p. 337). The phrase "rule out" in a medical record means that the disorder is suspected, but not confirmed – i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out. See United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir. 2008). The evidence of record also shows Plaintiff was taking multiple medications for mental impairments throughout the relevant period and immediately after, such as Trazodone, Wellbutrin, Cymbalta, Lamictal, Depakote, Buspar, and Xanax. (ECF No. 13, pp. 48, 324-29, 516, 745). The ALJ noted points in time where Plaintiff was doing better, but declined to discuss those

9

points in time when Plaintiff was doing worse such as when her problems worsened on August 26, 2003, or on October 20, 2006. (ECF No. 13, pp. 326, 366). Despite recognizing Plaintiff's mental impairments as severe and existing both prior to and after the relevant period, the ALJ has cherry picked instances where Plaintiff reported doing somewhat better, rather than evaluating all of the evidence in the record as a whole.

The ALJ also focuses primarily on Plaintiff's activities in discounting her allegations of psychological impairment and the opinion of Dr. Warren. The ALJ determined Plaintiff's activities were inconsistent with the type of mental health symptoms Plaintiff alleged. (ECF No. 13, pp. 19, 24-25). The ALJ, however, did not compare Plaintiff's activities to the symptoms of which Plaintiff complained. For example, the ALJ noted that taking family vacations was inconsistent with allegations of a disabling psychological impairment, but evidence in the record indicates Plaintiff had more than a minimal amount of difficulty during those vacations. On April 2, 2004, Dr. Richard Cunningham noted Plaintiff had "been doing reasonably well," but worsened after going on a trip. (ECF No. 13, p. 325). On June 12, 2006, Plaintiff reported to her therapist at Burrell Behavioral Health that she experienced more stress and had more difficulty after taking a vacation. (ECF No. 13, p. 335, 355). Plaintiff reported to her therapist on August 14, 2006, that a trip she took to visit one of her sisters actually made her condition worse. (ECF No. 13, p. 362). Plaintiff was apprehensive with her therapist on March 2, 2007, about an upcoming vacation and her therapist remarked, "[w]e spent the majority of the session discussing the upcoming vacation that she will be going on with her family. It was a similar trip last year that prompted a severe episode of depression and a hospitalization." (ECF No. 13, p. 373). The ALJ also cited Plaintiff's activities with her church, but did not attempt to reconcile those activities with Plaintiff's complaints to her mental

10

healthcare providers. For example, one of Plaintiff's symptoms was "that she cannot say 'no' to anyone." (ECF No. 13, p. 334). Records from July 12, 2006, indicate Plaintiff "was working too much doing volunteer work at her church," which when combined with other stressors Plaintiff "became overwhelmed with this." (ECF No. 13, p. 358). The same record states, "[Plaintiff] had another depressive episode last May, 2006, after taking a trip with her family." Id. Plaintiff need not prove that her symptoms preclude all productive activity and confine her to life in front of the television. Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996); See also Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998) (holding that the ability to wash dishes, cook, dust, sweep, make beds, vacuum one room at a time, do the laundry, drive a motor vehicle moderate distances, care for pets, visit with others, and to read and watch television were not necessarily inconsistent with Plaintiff's subjective complaints). The fact that Plaintiff attempts to maintain her home, engage in an ordinary life, and travel with her family for relaxation is not necessarily inconsistent with Plaintiff's complaints, and in no way directs a finding she is able to engage in light, unskilled, work. The ALJ's duty is to determine whether Plaintiff has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Draper v. Barnhart, 425 F.3d 1127, 1131 (8th Cir. 2005).

This Court also finds the ALJ's speculative treatment of the opinion evidence in the record troubling. With regard to the opinion of Dr. Warren, the ALJ sated:

> As with many of the other opinions of record, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality that should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such

> motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(ECF No. 13, p. 25). The ALJ's accusations are not only purely speculative but are directly contradicted by Dr. Warren's own opinions. Dr. Warren provided multiple opinions on the record but one in particular, dated approximately seven months prior to Plaintiff's administrative hearing, is especially revealing. (ECF No. 13, pp. 1191-92). Dr. Warren provided a letter on March 15, 2013, opining as to Plaintiff's psychological impairments. Id. In it, she cited Plaintiff's diagnoses as bipolar disorder, type 2, with ultra-rapid cycling, anxiety disorder with agoraphobia, and PTSD. Id. at 1191. Dr. Warren stated, "It was clear from early in our work together that [Plaintiff] would need to apply for disability. However, I believe she was never appropriately encouraged in that direction, ironically, because she had multiple physicians and therapists involved in her treatment. . . . I had discussed the possibility of applying as early as 08/11/2006." Id. In direct contradiction of the ALJ's speculative discussion of Dr. Warren's motives, she continued:

> I have a policy of waiting until I have seen a patient for 6 months before I write any letters in support of their application. Unfortunately, I assumed that [Plaintiff] was moving ahead with her application. We even talked on several occasions about how difficult it was for her to concentrate and work on completing the task, and about how much her own personal sense of 'failure' was getting in the way of pursuing the help we both thought she needed.

Id. In formulating her opinion, Dr. Warren stated that she had thoroughly reviewed her own notes as well as those provided by other healthcare providers and that she had personally met with Plaintiff on more than twenty occasions for evaluation and therapy. Id. at 1192. Dr. Warren closed her letter by stating, "I strongly support [Plaintiff's] application for disability benefits," and if the ALJ were in any doubt as to the motive behind Dr. Warren's opinion or its disparity with objective evidence in the record, Dr. Warren offered to, "gladly testify

remotely, if possible, at your convenience." Id. The ALJ similarly discounted the opinion of Plaintiff's psychologist Suzanne McKenna based on the same speculative analysis of Ms. McKenna's motive. (ECF No. 13, p. 26). Plaintiff's administrative hearing was held on October 31, 2013, and the record does not contain any indication the ALJ sought clarification on Dr. Warren's opinion or that she was asked to testify at the hearing on Plaintiff's behalf, as her letter indicated she was willing to do. (ECF No. 13, pp. 37, 1192).

The ALJ gave "the greatest weight" to the non-examining State agency consultants, and commented, "[t]hese expert opinions are balanced, objective, and consistent with the objective medical evidence of record." (ECF No. 13, p. 24). The ALJ, however, discounted every treating source's opinion, the same treating sources which provided the vast majority of the objective evidence in the record concerning Plaintiff's psychological impairments upon which all of the opinions in the record were based. (ECF No. 13, p. 24). Dr. Warren and Ms. McKenna were treating sources for Plaintiff's psychological impairments, and disregarding their opinion leaves little to no evidence in the record on the issue. The ALJ, therefore, should have specifically discussed the remaining objective evidence upon which he based his RFC determination. See Pratt v. Sullivan, 956 F.2d 830, 834 (8th Cir. 1992) (per curiam) (reversible error for ALJ to substitute his own conclusions for diagnosis of examining psychiatrist); See also DiMasse v. Barnhart, 88 Fed.Appx. 956, 957 (8th Cir. 2004) (per curiam) (unpublished).

Therefore, this Court finds the ALJ has not set forth a sufficient basis for determining Dr. Warren's opinion was conclusory or inconsistent with the record, and that, for the reasons discussed herein, the ALJ's RFC determination was not based on substantial evidence in the record as a whole.

### IV. **Conclusion:**

Based on the foregoing, on remand the ALJ is ordered to examine whether Plaintiff's migraine headaches, whether alone or in combination with her other impairments, are of a severity to meet or medically equal the criteria of an impairment in the Listings, and the ALJ shall give particular consideration to the closely analogous neurological impairments in Listing 11.00. Then, should the ALJ determine Plaintiff's migraine headaches alone or in combination with her other impairments do not meet or medically equal the severity of one of the impairments in the Listings, the ALJ shall re-evaluate Plaintiff's RFC with citation to specific examples of substantial evidence in support.

When determining Plaintiff's RFC, the ALJ shall also re-examine the weight given to Plaintiff's treating physicians in connection with the objective evidence in the record as a whole, and provide specific analysis of the longitudinal evidence of Plaintiff's psychological impairments, including her documented periods of improvement, decompensation, treatment success with medication, medication side effects, and other evidence informative of Plaintiff's ability to engage in work-like tasks on a sustained basis during the relevant period. If the ALJ determines Plaintiff's impairments, such as her migraine headaches, alone or in combination, would result in Plaintiff requiring unscheduled days off, unscheduled breaks, problems with persistence or pace, or would otherwise require Plaintiff to be off-task during work, the ALJ shall specify as such in his RFC determination. Then, should the ALJ determine Plaintiff cannot return to her PRW, the ALJ shall procure the expert testimony of a VE and present to him or her a hypothetical question which includes those impairments that the ALJ finds are substantially supported by the record as a whole and are indicated in the ALJ's RFC determination.

Accordingly, having carefully reviewed the record, the undersigned finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to Plaintiff should be and hereby is reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 1st day of February, 2017.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE